UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN GENE IVERSON,

    Petitioner,

v.                                        Civil Action No. 2:10-cv-14077
                                          Honorable Nancy G. Edmunds

STEVE RIVARD,

    Respondent,

_____/

**OPINION AND ORDER DENYING PETITION FOR A
WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY BUT GRANTING PERMISSION FOR AN APPLICATION FOR
LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

**I.  INTRODUCTION**

This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254.  Michigan prisoner Allen Gene Iverson is incarcerated by the Michigan Department of Corrections, currently housed at the St. Louis Correctional Facility in St. Louis, Michigan, where he is serving a sentence of twenty-five to forty years following his guilty-plea conviction for first-degree criminal sexual conduct (CSC), involving his twelve-year-old daughter.  Iverson's conviction occurred in the Circuit Court in Crawford County, Michigan, on January 10, 2008.  The trial judge sentenced him on February 7, 2008.  In his *pro se* Habeas Petition, Iverson alleges that his conviction and sentence are unconstitutional because his plea was involuntary and his sentence violates the Eighth Amendment as it is disproportionate to the offense with which he was convicted.  The Court will deny the Petition.  The Court also will decline to issue Iverson a Certificate of Appealability but will grant him permission for an Application for Leave to Proceed on Appeal *In Forma Pauperis.*

## II.  BACKGROUND

Iverson was originally charged with five counts of CSC I against two minor victims, which included his daughter. The prosecutor agreed to dismiss four of the charges except the one count committed against his daughter. Iverson agreed to the plea agreement. The following colloquy occurred between Iverson and the trial judge at his guilty-plea hearing held on January 10, 2008:

> [THE COURT]: Tell me in your own words what is the plea bargain, sentence bargain.
>
> [IVERSON]: Sentence bargain–
>
> [THE COURT]: The plea bargain and the sentence bargain; tell me what it is so that I know that you know what you're doing here.
>
> [DEFENSE COUNSEL]: What are you going to do?
>
> [IVERSON]: I'm pleading guilty and that and–
>
> [THE COURT]: To what?
>
> [IVERSON]: To my–me having–
>
> [THE COURT]: What's the name of the offense you're pleading guilty to? Let's start there.
>
> [IVERSON]: CSC with my daughter.
>
> [THE COURT]: First degree?
>
> [IVERSON]: First degree, yes.
>
> [THE COURT]: So criminal sexual conduct first degree? You're going to plead guilty to that?
>
> [IVERSON]: Yes, sir.

* * *

[THE COURT]: All right. And if you plead guilty to that charge, Count I, in this file, 2598, what is the prosecutor going to do? What's the bargain?

[IVERSON]: Take and get rid of some of the other charges that I have on me and stuff.

* * *

[THE COURT]: There's four criminal sexual conduct first degree charges that you were just arraigned on in file 2663; is that correct?

[IVERSON]: Yes, sir.

[THE COURT]: All right. What's going to happen to those four charges?

[IVERSON]: They're going to be abolished, I guess, it would be called.

[THE COURT]: Well, don't guess. I want to know what you've been promised, see.

[IVERSON]: I'm not sure how to really actually word that.

[DEFENSE COUNSEL]: Would they be dismissed?

[IVERSON]: Dismissed, I guess, yes.

[THE COURT]: Okay. Don't guess. You need to tell me–

[IVERSON]: I'm sorry.

[THE COURT]: –the plea bargain. I'm not trying to be hard with you, but my goodness, this is series [sic] business. You need to just plainly and simply tell me what you're doing, what–

[IVERSON]: Dismissed.

[THE COURT]: –you've been promised.

[IVERSON]: Yes, he is willing to take and dismiss the other four charges.

[THE COURT]: All right. And in addition, what else has been promised to you with regard to your sentence?

[IVERSON]: Twenty-five years.

[THE COURT]: What about 25 years? What about it?

\* \* \*

[THE COURT]: Can you tell me the plea bargain and sentence bargain in your own words?

[IVERSON]: The plea bargain is to take 25 years under 07-2598-FC of my daughter, [T.I.] I'm going to plead guilty for that. To have the other four counts dropped. No other charges concerning the two other minors in 07-2663 and 07-2598.

[THE COURT]: Is that [the] correct and complete agreement, Mr. Sommerfeld?

[DEFENSE COUNSEL]: Yes, I believe he mentioned the 25 years. He was pleading guilty to 2598, and for that, 2663 was going to be dismissed in its entirety, and, further, any other allegations concerning the two minors listed in both files would be dismissed or not even charged.

\* \* \*

[THE COURT]: I need to read this charge to you right now. Take a look at 2598, the information as amended. The information as amended in 2598 is as follows: It is alleged that on or about December 6 or on or about or between that date and January–the month of January, '07, in Grayling Township, Crawford County, it is alleged in Count I that you did engage in sexual penetration, specifically digital/vaginal penetration with [T.I.], said person being under 13 years of age at the time, contrary to the criminal sexual conduct statute [], which carries a penalty of not less than 25 years and up to life or any term of years but not less than 25 years. Do you understand the charge and the penalties in Count I in 2598?

[IVERSON]: Yes, sir.

\* \* \*

[THE COURT]: Now, Mr. Iverson, I've been handed a circuit court advice of rights plea form that has your signature on it. Did you sign this?

[IVERSON]: Yes, sir.

[THE COURT]: Did you actually read the rights before you signed it?

[IVERSON]: Yes, sir.

4

[THE COURT]: It says here that I understand all the above and agree to waive all the above rights; is that true?

[IVERSON]: Yes, sir.

[THE COURT]: Tell me one of the rights you'd be waiving or giving up here.

[IVERSON]: To have my trial and stuff.

[THE COURT]: Correct. Your right to a jury trial is one of the most important rights on there. And there's also an automatic right to appeal on there, but you lose those rights–

[IVERSON]: Yes, sir.

[THE COURT]: –if you plead guilty. Knowing that, do you still wish to go ahead?

[IVERSON]: Yes, sir.

[THE COURT]: Did I place you under oath already?

[IVERSON]: Yes, sir.

[THE COURT]: Have you been promised anything other than the plea bargain and sentence bargain that I've heard on the record here today from the lawyers and from you? Have you been promised anything else?

[IVERSON]: No, sir.

* * *

[THE COURT]: Has anyone coerced you or threatened you in any way to get you to enter this guilty plea today?

[IVERSON]: No, sir.

[THE COURT]: Are you entering this proposed plea of your own free choice and free will?

[IVERSON]: Yes, sir.

[THE COURT]: Have you made up your own mind, made your own personal decision as to how to handle your cases?

5

[IVERSON]: I'm going to try to get help and stuff. My main–be able to do is–

[THE COURT]: What now? I'm not getting that at all. Let me ask you again. Have you made up your own mind, made your own personal decision as to how to handle these charges that you have?

[IVERSON]: Yes, sir.

[THE COURT]: Okay. In other words, what I'm getting at is, some people try to tell me like maybe next year–someone might come to me next year and say I want to withdraw my plea because the only reason I pled guilty is my lawyer told me it was a good idea. Do you understand what I'm saying?

[IVERSON]: Yes, sir.

[THE COURT]: You could certainly listen to your lawyer's advice. And you've had two lawyers on this case, right?

[IVERSON]: Yes, sir.

[THE COURT]: You had your retained lawyer, and you have Mr. Sommerfeld, your appointed lawyer, right?

[IVERSON]: Yes, sir.

[THE COURT]: So you've talked to a lot of–at least two lawyers a lot about your case, right?

[IVERSON]: Yes, sir.

[THE COURT]: And have they told you that you have to make the final decisions?

[IVERSON]: Yes, sir.

[THE COURT]: Because you're the client. You need to make the call, correct?

[IVERSON]: Yep.

[THE COURT]: Do you know that Mr. Sommerfeld is ready, willing and able to go and have your jury trial with you on January 24th, I think, it is?

[IVERSON]: Yes, sir.

[THE COURT]: January 24th and 5th. Your jury trial's all set, right?

[IVERSON]: Yes, sir.

[THE COURT]: And you don't want to have a jury trial?

[IVERSON]: No, sir.

[THE COURT]: If I accept your plea, you cannot come into court at a later time and claim that you were forced or coerced or threatened. Do you understand that?

[IVERSON]: Yes, sir.

[THE COURT]: And if I accept your plea, you could not come into court later and add terms to the bargain or change things you've told me as the plea bargain. Do you understand that?

[IVERSON]: Yes, sir.

[THE COURT]: Knowing that you would lose those important trial rights and understanding the penalties involved, how do you plead to Count I in 2598, criminal sexual conduct first degree?

[IVERSON]: Guilty.

[THE COURT]: By the way, I forgot to ask you two minor things, but it's required by rule. Tell me the name of the offense in Count I?

[IVERSON]: [T.I.]

[THE COURT]: No, no, the name of the offense. What's the name of the crime? Mr. Sommerfeld will point to it for you.

[IVERSON]: CSC.

[THE COURT]: Well, don't give me abbreviations.

[DEFENSE COUNSEL]: What is Count I called?

[THE COURT]: Don't give me abbreviations.

[IVERSON]: Criminal sexual conduct in the first degree.

[THE COURT]: Correct.

[IVERSON]: Person under the age of 13.

[THE COURT]: Correct. And what's the maximum possible penalty?

[IVERSON]: Life.

[THE COURT]: Life, correct. And what's the mandatory minimum?

[IVERSON]: Twenty-five years.

[THE COURT]: Correct. All right. Now, how do you plead to that charge?

[IVERSON]: Guilty.

[THE COURT]: What did you do to make you think you're guilty?

[IVERSON]: I had penetration on my daughter.

[THE COURT]: Sexual penetration?

[IVERSON]: Yes.

[THE COURT]: What do you mean? What did you do?

[IVERSON]: Stuck my finger in her vagina.

[THE COURT]: And who was it?

[IVERSON]: My daughter, [T.I.]

[THE COURT]: How old was she at the time?

[IVERSON]: Twelve.

[THE COURT]: And when did this occur?

[IVERSON]: 12-06 and 1-07.

[THE COURT]: Some time around December of '06 and January of '07?

[IVERSON]: Yes, sir.

[THE COURT]: Is that true?

[IVERSON]: Yes, sir.

>[THE COURT]: Where did this occur?
>
>[IVERSON]: In my own home.
>
>[THE COURT]: In Grayling Township, Crawford County, Michigan?
>
>[IVERSON]: Yes, sir.

Plea Hr'g Tr. 11-25, Jan.10, 2008, ECF No. 7-6.

At his sentencing hearing held on February 7, 2008, Iverson's counsel alluded to statements that Iverson made in the presentence investigation report that he had "destroyed his family" and "hurt his daughter." Sentence Hr'g Tr. 4-5, Feb. 7, 2008, ECF No. 7-7. Iverson himself said, "I'm just very sorry what I've caused the damage and stuff," and expressed a desire to enter counseling. *Id.*

Subsequently, some seven months later, Iverson filed a motion seeking to withdraw his guilty plea. At that motion hearing, he testified that he lied during his plea hearing. Mot. Hr'g Tr. 35-36, Sept. 11, 2008, ECF No. 7-8. However, he admitted that he was telling the truth when he said that his attorneys told him he had to make the "final decisions" as to whether to testify. *Id.* at 28. He admitted that he was telling the truth when he said that he understood that, if his plea was accepted, he would not be allowed to return to court and claim he was forced or coerced or threatened into taking the plea. *Id.* at 29-30. Iverson claimed that his attorney told him outside the courtroom that he was pleading to second-degree criminal sexual conduct, that he would receive a sentence of five to fifteen years, and that he should lie and testify that he put his finger in his daughter's vagina. *Id.* at 7-9, 37. Defense counsel testified that there was never an offer of second-degree CSC, that there was never an offer of a five- to fifteen-year sentence, and

9

that he never told Iverson otherwise. Mot. Hr'g Tr. 14, 23-28, Oct. 20, 2008, ECF No. 7-9. Defense counsel also denied that he pressured Iverson into pleading guilty. *Id.* at 16-17.

The trial court found Iverson's testimony "patently incredible," found that his affidavit was "patently false and absolutely unsupported anywhere on the record" and "bogus," and found that his statement that he thought there was a CSC II offer was "absurd." Mot. Hr'g Tr. 50-54, Oct. 20, 2008, ECF No. 7-9. The trial court further found that Iverson "pled guilty knowingly, freely and voluntarily to CSC 1st degree, and [he] knew what [he was] doing, and [the trial judge] found that [he] knew what [he was] doing, and [he] told [the trial judge he] knew what [he was] doing." *Id.* at 54. The trial court then denied the motion.

On February 9, 2009, Iverson filed a Delayed Application for Leave to Appeal with the Michigan Court of Appeals, raising the same claims raised in this Habeas Petition. On March 12, 2009, the Court of Appeals affirmed his conviction and sentence. *People v. Iverson*, No. 290314 (Mich. Ct. App. Mar. 12, 2009). Iverson thereafter filed an Application for Leave to Appeal that decision with the Michigan Supreme Court, which was denied on August 6, 2009. *People v. Iverson*, 484 Mich. 870, 769 N.W.2d 712 (2009) (Table).

Iverson neither filed a post-conviction motion for relief from judgment with the state trial court nor a petition for a writ of certiorari with the United States Supreme Court. Rather, on October 12, 2010, he filed this Habeas Petition, which he signed and dated October 2, 2010.

### III. DISCUSSION

## A. Standard of Review

Iverson's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. ----, ----, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) ( per curiam )). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. ----, ----, 131 S.Ct. 770, 786 (2011) (citation omitted). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citation omitted); *see also Cullen v. Pinholster*, --- U.S. ---, 131 S.Ct. 1388, 1398 (2011) (holding that "[t]his is a difficult to meet and 'highly deferential standard for evaluating state-court rulings") (citing *Harrington*, 562 U.S. at ---, 131 S.Ct at 786 and *Woodford*, 537 U.S. at 24).

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at ---, 131 S.Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)

(Stevens, J., concurring in judgment)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at ---, 131 S.Ct. at 786-87.

### B. Iverson's Plea Was Not Involuntary

In his first habeas claim, Iverson alleges that his plea was the product of duress and coercion and was entered as a result of counsel's bad advice.

To be constitutionally valid, a plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A defendant who pleads guilty must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). Further, in *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), the Supreme Court held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Where the trial court has fairly apprised the defendant of the consequences of his guilty plea, the plea cannot be challenged as violative of due process unless it was induced by threats, misrepresentation, or improper promises, or the government has breached the plea agreement. *Mabry v. Johnson*, 467 U.S. 504, 509 (1984), *disapproved of on other grounds by Puckett v. United States*, 556 U.S. 129, 138 n.1 (2009). Representations of the defendant at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

In this case, Iverson has failed to sustain his burden under the AEDPA. His claim that he did not understand the consequences of his plea, and that he was coerced into pleading, is completely contradicted by the record, including his own sworn statements. The trial judge painstakingly explained all of the rights that he would be waiving by pleading guilty, as well as the potential sentencing consequences. *See* section II, BACKGROUND, *supra*. Iverson stated, under oath, that he understood the rights he would be waiving, and that he understood what charges would be dismissed as a result of the plea bargain. *Id.* He stated, under oath, that no threats or promises were made beyond what was in the plea agreement, and that he was satisfied with his attorney. *Id.*

A review of Iverson's guilty-plea colloquy shows that his plea was voluntary, knowing and intelligent, and therefore completely consistent with the standards of due process articulated by the Supreme Court in *Boykin v. Alabama* and *Brady v. United States*. Iverson has made no showing of "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1969). There has been neither misapplication nor unreasonable application of clearly established federal law, nor has Iverson met his burden of showing that the state courts unreasonably determined any facts.

Additionally, to the extent that Iverson claims that the trial court abused its discretion in denying his motion to withdraw his plea, his claim is not cognizable on federal-habeas review, because there is no federal constitutional right that requires a state court to allow a defendant to withdraw a voluntary and intelligent plea. *Carwile v. Smith*, 874 F.2d 382, 385-86 (6th Cir. 1989).

With that, the Court concludes that Iverson is not entitled to habeas relief with respect to this claim.

### C. Iverson's Sentence Is Not Disproportionate

In his second habeas claim, Iverson argues that his sentence is disproportionate to the offense, given that he had no criminal history, and is in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

Federal courts have recognized only a narrow proportionality requirement in non-capital sentences. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring). The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime. *Id.*; *see also Graham v. Florida*, 560 U.S. ---, ---, 130 S.Ct. 2011, 2021-22 (2010) (recognizing that embodied in the Eighth Amendment's cruel and unusual punishment ban is the "precept of justice that punishment for [a] crime should be graduated and proportioned to [the] offense" and recognizing that the Supreme Court's cases implementing the proportionality standard fall within two general classifications; challenges to the length of a term-of-years sentences and those in which the Supreme Court has applied certain categorical rules against the death penalty).

The Sixth Circuit follows *Harmelin's* narrow proportionality principle. *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2010) (citing *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). "Consequently, only extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583. The Sixth Circuit also has held that it simply "will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*,

49 F.3d 253, 261 (6th Cir. 1995).

Moreover, "a sentence that falls within the maximum penalty authorized by statute generally does not constitute cruel and unusual punishment." *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995) (internal quotations and citation omitted). Furthermore, this Court held in *Bell v. White*, No. 07-13272, 2010 WL 1859990, at *4 (E.D. Mich. May 10, 2010), that habeas relief was not warranted on Eighth Amendment grounds where the petitioner was sentenced as a fourth habitual offender to seven-and-one-half to fifteen years imprisonment on his drug conviction, a term within the statutory maximum: "The trial court acted within its discretion in imposing Petitioner's sentence, and there is no extreme disparity between his crime and sentence so as to offend the Eighth Amendment." *Id.*

Like *Harmelin*, where the Supreme Court held that a mandatory sentence of life imprisonment for drug possession did not violate the Eighth Amendment, it cannot be said that Iverson's sentence is grossly disproportionate to his crime. *Harmelin*, 501 U.S. at 996; *Chandler v. Jones*, 813 F.2d 773, 779 (6th Cir. 1987); *see also Stadler v. Curtin*, 682 F. Supp. 2d 807, 828-30 (E.D. Mich. Jan. 22, 2010) (after *Harmelin*, the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are grossly disproportionate to the crime). The sentence here, a term short of life imprisonment that fell within the statutory maximum, is not grossly disproportionate, and there is not extreme disparity between the crime of sexually penetrating one's twelve-year-old daughter and a sentence of twenty-five to forty years. Iverson is not entitled to habeas relief with respect to this claim.

### D. Certificate of Appealability

The Court declines to issue a Certificate of Appealability (COA) to Iverson. A court

may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a COA should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

The Court concludes that jurists of reason would not find its rulings debatable or wrong. The Court thus declines to issue Iverson a COA. However, he may proceed *in forma pauperis* on appeal because he was granted *in forma pauperis* status in this Court. Fed. R. App. P. 24(a)(3).

### IV. CONCLUSION

For the reasons stated, this Court concludes that Petitioner Iverson is not entitled to federal habeas relief on the claims presented in his Habeas Petition.

Accordingly, IT IS ORDERED that the "Petition for Writ of Habeas Corpus" is

DENIED WITH PREJUDICE.  Pet'r's Pet. For Writ of Habeas Corpus, ECF No. 1.

IT IS FURTHER ORDERED that the Court declines to issue Iverson a Certificate of Appealability and but grants him permission for an Application for Leave to Proceed on Appeal *In Forma Pauperis*, if he so chooses to appeal the Court's decision.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  August 22, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 22, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager